UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/14

------------------------------------------X

In re:

NORTHERN NEW ENGLAND TELEPHONE                    Chapter 11
OPERATIONS, LLC,
                                                  Case No.
                    Debtor.                       09-16365-CGM

------------------------------------------X

CITY OF CONCORD, NEW HAMPSHIRE,

                    Appellant,                    14 Civ. 2187 (RWS)

     -against-                                    OPINION

NORTHERN NEW ENGLAND TELEPHONE
OPERATIONS, LLC,

                    Appellee.

------------------------------------------X


A P P E A R A N C E S :

          ATTORNEYS FOR APPELLANT CITY OF CONCORD, NEW HAMPSHIRE

          CITY SOLICITOR
          41 Green Street
          Concord, NH 00301
          By:  James W. Kennedy, Esq.


          ATTORNEYS FOR APPELLEE NORTHERN NEW ENGLAND TELEPHONE
          OPERATIONS, LLC

          PAUL HASTINGS LLP
          Park Avenue Tower
          75 E. 55th Street, First Floor
          New York, NY 10022
          By:  Luc A. Despins, Esq.
               James T. Grogan, Esq.

**Sweet, D.J.**

Appellant City of Concord, New Hampshire, (the "City" or "Appellant") has moved to appeal the February 11, 2014 Order Denying City of Concord New Hampshire's Motion for Allowance and Payment of Tax Claims, *see In re N. New England Tel. Operations LLC*, 504 B.R. 372 (Bankr. S.D.N.Y. 2014) (the "Bankruptcy Order"), of the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), pursuant to 28 U.S.C. § 158(a). The Bankruptcy Order, and the underlying matter, involved the bankruptcy of FairPoint Communications, Inc. and its affiliated reorganized debtors (collectively, "FairPoint" or the "Debtors"), including Northern New England Telephone Operations, LLC ("New England Telco"). *See* Bankruptcy Order, 504 B.R. at 374.

Based on the conclusions set forth below, the Bankruptcy Order is affirmed and the appeal dismissed.

## I.   Prior Proceedings

FairPoint filed for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on October 26, 2009 in the Bankruptcy Court. *Id.* at 375. On June 30, 2011 and November 7, 2012, the Bankruptcy Court closed all chapter 11 cases in the

1

Debtors' jointly administered proceedings except for the chapter 11 case of New England Telco.

On October 11, 2013 the City filed a motion for Allowance and Payment of Tax Claims with the Bankruptcy Court. The motion sought payment of certain January and March 2010 tax bills (the "Tax Claim") on six properties owned by New England Telco which were due for the 2009 tax year and located within Concord, N.H.: (1) Map 79, Lot 4, Bldg. 4, Unit A ("Locke RD"); (2) Map 36, Lot 1, Bldg. 6 ("12 South ST"); (3) Map 98, Lot 3, Bldg. 9 ("Hopkinton RD"); (4) Map 122, Lot 4, Bldg. 9 ("445 Mountain RD"); (5) Map 111G, Lot 1, Bldg. 11 ("64 Regional DR"); and (6) Map 1412P, Lot 29 ("18 Charles ST") (collectively, the "Properties"). On February 11, 2014, the Bankruptcy Court denied payment of the Tax Claim in the Bankruptcy Order.

The City initiated the instant action seeking an appeal of the Bankruptcy Order on March 28, 2014. Briefing was submitted and oral arguments held, and the matter was marked fully submitted on May 14, 2014.

## II.  Facts

### a.  *The FairPoint Bankruptcy*

2

On October 26, 2009, each of the Debtors filed petitions for relief under Chapter 11. On February 4, 2010, the Bankruptcy Court entered an order establishing the deadline and procedures for filing proofs of claims in the Debtors' chapter 11 cases (the "Bar Date Order"). *Id.* at 375. The Bar Date Order established April 26, 2010 (the "Bar Date") as the last date by which governmental units (as defined in § 101(27) of the Code) could file proofs of claims. *Id.*

The Bankruptcy Court entered an order on January 13, 2011 (the "Confirmation Order") confirming the Debtors' third amended joint plan of reorganization (the "Plan"). *See* Order Confirming Third Am. Plan, No. 09-16335, ECF No. 2113; Debtors' Third Am. Join Plan, No. 09-16335, ECF No. 2013. The Plan became effective and was substantially consummated according to its terms on January 24, 2011. By this time, except for the case of New England Telco, all of the Debtors' cases had been fully-administered and closed.

The Plan provides that "the property of the Estate and FairPoint shall revest in reorganized Fair Point" and that:

3

> As of the Effective Date, all property of FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests, except as specifically provided in the Plan, the Confirmation Order, or the New Credit Agreement.

Plan § 8.9 (emphasis added). The Plan defines "FairPoint" and "Reorganized FairPoint" to include New England Telco. *See* Plan §§ 1.53, 1.122. Section 1.4 of the Plan defined "Administrative Expense Claim" as, among other things, a right to payment under section 503(b) of the Bankruptcy Code. *See* Plan § 1.4. Both the Plan and the Confirmation Ordered required all administrative expense claimants to make a request for payment by March 25, 2011, 60 days after the effective date of the Plan (the "Administrative Expense Bar Date"). Bankruptcy Order, 504 B.R. at 375.

### b.   *The Tax Claim of the City*

New England Telco owns a number of parcels of real property located within the taxing jurisdiction of the City. The City sends property tax bills for a tax year on a quarterly basis, with the first two bills for that year issued in July and October of the tax year and the second two bills issued in January and March of the following calendar year. *See* N.H. Rev. Stat. Ann. § 76:15-aa, II (a); Bankruptcy Order, 504 B.R. at 375. The tax bills for 2015, for example, will be issued on July and October

4

2015 and January and March 2016. On April 1 of each year, a lien to secure property taxes arises on real estate by operation of law. N.H. Rev. Stat. Ann. § 80:19 (2013). For the 2009 tax year, the City sent property tax bills for the Properties in July and October of 2009 and January and March of 2010.

On November 20, 2009, the City mailed New England Telco the 2009 tax bills for its sixteen properties located in the City. Case No. 09-16365, ECF No. 25, Ex. 3. On April 14, 2010, the City sent notice to New England Telco of the impending tax lien against sixteen of its properties due to its non-payment of 2009 taxes on the Properties. *Id.* In that notice, the City advised New England Telco that "[i]f the total amounts are not paid before [May 14, 2010 at 4:15 PM], a Real Estate Tax Lien will be executed to [Concord] and recorded at the Merrimack County Registry of Deeds." *Id.*, Ex. 2 at 2. The notice further provided that the "Tax Lien will entitle [Concord] to a Tax Deed for a 100% interest in the property described above unless, within 2 years of the Tax Lien, the property is redeemed by payment of the amount of the above totals plus interest at 18% per annum and redemption costs." *Id.*

With the chapter 11 filing of FairPoint, the City sought payment of certain real property taxes assessed against New England Telco. Bankruptcy Order, 504 B.R. at 375-76. These claims included

5

six claims that were filed by the City for taxes included on the
July and October 2009 tax bills for the Properties (the "Half-Year
Claims"). *Id.* The Half-Year Claims are as follows:

| Half-Year Claims | | | |
|---|---|---|---|
| Proof of Claim Number | Claim Amount | Basis of Claim | Property |
| 367 | $1,426.64 | 2009 Property Taxes | 18 Charles St. |
| 371 | $412.66 | 2009 Property Taxes | Locke Road |
| 375 | $529.38 | 2009 Property Taxes | 445 Mountain Road |
| 378 | $16,526.73 | 2009 Property Taxes | 64 Regional Drive |
| 379 | $11,620.35 | 2009 Property Taxes | 12 South Street. |
| 381 | $364.60 | 2009 Property Taxes | Hopkinton Road |

Two of the Half-Year Claims, claim numbers 378 and 379,
were allowed under the Plan and Confirmation Order and ultimately
paid in full. *Id.* at 376.

On November 8, 2011, the Debtors filed an objection (the
"88th Omnibus Claims Objection") seeking, among other things, the
reduction of the allowed amount of the four remaining Half-Year
Claims on the basis that the filed amounts on those claims did not
match the Debtors' books and records. By order dated December 8,
2011 (the "December 8 Order"), the Bankruptcy Court granted the
88th Omnibus Claims Objection, thereby reduced and allowed the

6

remaining four Half-Year Claims as priority claims. *See* Bankruptcy
Order, 504 B.R. at 376.

The City filed a total of twenty-one proofs of claims
before the Bar Date. *Id.* at 376. However, it did not file proofs
of claims for the January and March 2010 tax bills, which were due
for the 2009 tax year. *Id.* Instead, it moved the Bankruptcy Court
for an Allowance and Payment of the Tax Claims on these bills.
Bankruptcy Court, 504 B.R. at 376.

     *c.   The Bankruptcy Order*

On February 11, 2014, the Bankruptcy Court issued the
Bankruptcy Order rejecting the City's contention that its
statutory lien was not extinguished under the Plan. The Bankruptcy
Court reasoned that (a) the Plan was confirmed, (b) the Plan dealt
with the Properties, (c) the City participated in the Debtors'
reorganization and (d) the Plan did not preserve the City's lien.
*Id.* at 376-82. Further, the Bankruptcy Court held that the 2009
tax reflected on the January and March 2010 bills was incurred
under state law on April 1, 2009. *Id.* at 380. The Bankruptcy Court
also held that the tax was not incurred by the bankruptcy estates
as an administrative priority expense. *Id.* at 378-80. In addition,
the Bankruptcy Order found that the City had not demonstrated

excusable neglect for its failure to assert its additional claims for taxes prior to the Bar Date. *Id.* at 380-82. The court reasoned that the City "was required to file a proof of claim for the Tax Claim" and "[s]ince the City failed to timely do so and has not provided adequate justification for such failure ... the City is not entitled to payment of the Tax Claim." *Id.* at 374-75.

On February 14, 2014, the Bankruptcy Court denied Concord's Motion in its entirety. *See* Appellee Ex. 16.

### III. **Standard of Review**

"On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. "The Bankruptcy Court's finding of facts are reviewed under a clearly erroneous standard." *In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 190 (S.D.N.Y. 2011) (citing *In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 (2d Cir. 1994)). A finding of fact is clearly erroneous if the Court is "left with the definite and firm conviction that a mistake has been committed." *Mannucci v. Cabrini Med. Ctr. (In re Cabrini Med. Ctr.),* 489 B.R. 7, 15-16 (S.D.N.Y. 2012).

The Bankruptcy Court's legal conclusions are reviewed *de novo*. *Kollel Mateh Efraim*, 456 B.R. at 190 (citing *Pearl-Phil GMT Ltd. v. Caldor Corp.*, 266 B.R. 575, 580 (S.D.N.Y. 2001)). "Mixed questions of law and fact are reviewed *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Id.* at 190 (citing *Best Payphones, Inc. v. Manhattan Telecomm. Corp.,* 432 B.R. 46, 53 (S.D.N.Y. 2010).

A district court reviews a bankruptcy court's decision to deny a request to file a late claim or other matters within a bankruptcy court's discretion under an "abuse of discretion" standard. *Mich. Funds Admin. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 494 Fed. App'x 135, 136 (2d Cir. 2012) (finding that lower court did not abuse its discretion in denying request to file late claim); *Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 124 (2d Cir. 2005) ("Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion."). Under the "abuse of discretion" standard, the Court should consider "whether, in light of the record as a whole, the bankruptcy court's decision was reasonable." *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 475 (S.D.N.Y. 2013).

## IV.  The Bankruptcy Order Is Affirmed

9

The City contends that the Bankruptcy Order should be reversed as: (i) the Plan did not deal with the Properties that are subject to the City's purported lien, (ii) the City did not participate in the Debtors' bankruptcy with respect to the Properties, (iii) the taxes reflected on the January and March 2010 bills are administrative expenses under section 503(b)(1)(b) that are not time-barred, and (iv) the City demonstrated that its failure to file a proof of claim on account of the January and March 2010 bills was the result of excusable neglect. Appellant Br. at 6. The City also reasons that under New Hampshire law, a lien arises in the April of each year to secure the payment of property taxes for that year and that it possesses a valid perfected tax lien on the Properties that passes through despite the Plan. Notwithstanding these arguments, the Bankruptcy Order is affirmed.

a.   *Section 1141(c) of the Bankruptcy Code and the Plan Extinguishes the City's Tax Lien*

Generally, liens pass through a bankruptcy unaffected. *See* 11 U.S.C. § 506. However, section 1141(c) is an exception to this rule:

> [E]xcept as otherwise provided in the plan or in the
> order confirming the plan, after confirmation of a plan,
> the property dealt with by the plan is free and clear of
> all claims and interests of creditors, equity security
> holders, and of general partners in the debtor.

11 U.S.C. § 1141(c). A provision in a reorganization plan that vests the property of the estates in the debtors "free and clear" of all liens will void all liens unless a lien was expressly preserved in the plan. *See In re WorldCom, Inc.,* 382 B.R. 610, 622 (Bankr. S.D.N.Y. 2008), *aff'd,* 2011 WL 1496378 (S.D.N.Y. Apr. 19, 2011), *aff'd,* 466 F. App'x 28 (2d Cir. 2012); *see also Elixir Indus. v. City Bank & Trust Co. (In re Ahern Enters.),* 507 F.3d 817, 820 (5th Cir. 2007) ("[T]he confirmation of a Chapter 11 plan voids liens on property dealt with by the plan unless they are specifically preserved, if the lien holder participates in the reorganization.").

For a lien to be avoided under section 1141(c), four conditions must be met: (1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien. *See WorldCom,* 382 B.R. at 622.

11

Factors (1) and (4) are clearly met and are not objected to by either party: the Bankruptcy Court confirmed the Plan via the Confirmation Order and section 8.9 of the Plan did not preserve the City's lien. *See* Bankruptcy Order, 504 B.R. at 377. Factors (2) and (3) are disputed by the parties. The City contends that the Bankruptcy Court erred in determining that factors (2) and (3) of the *WorldCom* test had been met.

i.   Section 8.9 of the Plan "Dealt With" the Properties

As an initial matter, section 8.9 of the Plan dealt with the Properties. Section 8.9 provides that "the property of the Estate and FairPoint shall revest in Reorganized FairPoint" and that "[a]s of the Effective Date, all property of FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests, except as specifically provided in the Plan, the Confirmation Order, or the New Credit Agreement." Plan § 8.9. The language in section 8.9 of the Plan was virtually identical to the language in the *WorldCom* plan of reorganization regarding lien extinguishment, *see* Bankruptcy Order, 504 B.R. at 377; *WorldCom*, 382 B.R. at 321, and *WorldCom* is analogous to the instant situation. In *WorldCom*, the Waldinger Corporation asserted a statutory lien under Nebraska law. *WorldCom*, 382 B.R. at 614. However, the court found that Waldinger's secured claim was

12

unsecured because its lien was extinguished under the terms of WorldCom's plan. *Id.* at 622-23. Like section 8.9 of the Plan, the *WorldCom* plan stated that "all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens...." *In re WorldCom, Inc.*, 382 B.R. at 621. Given the similar language employed in the Plan, *WorldCom*, affirmed by the Second Circuit, is dispositive here, and the Plan adequately "dealt with" the Tax Claim of the City.

The City contends that the Plan does not "deal with" the New England Telco properties because it does not specifically list the liens or those properties. Appellant Br. at 10-12. Yet the City has cited to no cases in this Circuit that explicitly requires such specificity in a reorganization plan. Moreover, a plan does not need to specifically list a creditor's liens to satisfy the criteria for lien extinction. *See WorldCom*, 382 B.R. at 622 ("The Court notes that the second criterion of the property that is subject to the lien must be dealt with by the plan does not require the lien itself to be dealt with by the Plan."). This analysis should logically extend to real and personal property, as having a requirement that a chapter 11 plan separately list each and every parcel of real and personal property (or lien) that is subject to the discharge contained in section 1141(c) would be unduly

13

burdensome in a manner that does not provide any perceivable benefit.

The City also argues that sections 13.2 and 13.3 of the Plan preserve its liens as it is more specific than section 8.9 to the Tax Claim and they would not extinguish any liens. Appellant Br. at 11-12. Section 13.2 and 13.3 deal with the "Discharge of Claims and Termination of Old FairPoint Equity Interests" and "Discharge of Debtors," respectively. These sections discharge only the City's *claims* for unpaid tax and the Debtors' *liability* for that tax. *See* Plan §§ 13.2, 13.3. Neither discuss the treatment of property liens. By contrast, Section 8.9 of the Plan extinguishes any *liens* the City may have against the Properties. *See* Plan § 8.9 ("As of the Effective Date, all property of FairPoint and Reorganized FairPoint shall be free of all ... Liens...."). Sections 13.2, 13.3 and 8.9 of the Plan are not ambiguous and separately delineate the resolution of claims, the Debtors' liability, and interests in estate property, respectively.

> ii.   The City Participated In the FairPoint Bankruptcy Proceedings

With regards to the participation factor, the City contends that it participated in the Debtors' bankruptcy proceedings with respect to the other claims it filed but not with respect to the January and March 2010 bills. Appellant Br. at 16. It states that it did not file a proof of claim for certain 2009 property taxes because it believed that it had a lien that secured that claim. *Id.* at 4 (citing N.H. Rev. Stat. Ann. § 80:19 (2013) ("The real estate of every person or corporation shall be holden for all taxes assessed against the owner thereof; and all real estate to whomsoever assessed shall be holden for all taxes thereon. All such liens shall continue until one year from October 1 following the assessment.").

The City's argument is unpersuasive. The City admits that it filed proofs of claims for the July and October 2009 bills for precisely the same 2009 tax due on the Properties. All claims and liens for the 2009 property taxes arose on April 1, 2009, and it would be counterintuitive to state that the City did not participate with respect the 2009 tax bills it elected to bill in January and March 2010 for the 2009 tax liens that had already arose when it did participate with respect to the 2009 taxes it elected to bill in July and October 2009: the City's election to bill in January and March 2010 does not remove them from participation in the FairPoint chapter 11 with respect to the 2009

15

property taxes as a whole. Indeed, the City's general participation with respect to the FairPoint bankruptcy proceedings is made even more poignant with its filing of twenty-one proofs of claims prior to the Bar Date and the City's litigation of the 88th Omnibus Claims Objection.

Furthermore, filing a proof of claim in a reorganization proceeding is sufficient in this Circuit to satisfy the participation element. *See WorldCom*, 382 B.R. at 622 (finding that the claimant "participated in the reorganization proceeding by filing a proof of claim."). The City had filed the Half-Year Claims on the Properties, which is a sufficient level of activity to find that the City's participated in the Debtors' bankruptcy.

The cases cited by the City in support of its position are inapplicable here. In *In re Be-Mac Transp. Co., Inc.*, 83 F.3d 1020 (8th Cir. 1996), the FDIC filed a secured proof of claim, but when it amended the claim it forgot to include the secured portion of its claim. The debtor then filed a plan of reorganization that proposed to treat the FDIC as an unsecured creditor for purposes of voting and distributions. FDIC sought leave from the bankruptcy court to further amend its proof of claim prior to confirmation and assert its status as a secured creditor. *Id.* at 1023. The bankruptcy court denied the FDIC's motion to amend the claim

16

because it was untimely, refused to count the FDIC's vote as a secured creditor, and confirmed the plan over the FDIC's objection. *Id.* at 1025. The Eighth Circuit reversed and found that the bankruptcy court erroneously denied the FDIC an opportunity to participate in the case even though the FDIC was actively pursuing its rights as a secured creditor prior to the confirmation of the plan and had timely filed a secured proof of claim that was inadvertently made unsecured due to subsequent amendment. *Id.* at 1026-27.

The concerns in *Be-Mac* are not present here. *Be-Mac* involved a secured creditor whose rights were improperly infringed during the contested confirmation of the plan and who triggered the claims allowance process by filing a secured proof of claim. Here, the City is challenging the Plan three years after confirmation of the Plan. Disturbing the Bankruptcy Order's holdings would unsettle the finality of the Plan, a factor that weighs for affirming the Bankruptcy Order.

Similarly, *Greater Am. Land Res., Inc. v. Town of Brick*, N.J., 11-CV-5308 CCC, 2012 WL 1831563 (D.N.J. May 17, 2012), does not compel reversal of the Bankruptcy Order. *Greater American* involved a creditor who filed a proof of claim relating to only one of two properties; that court in turn found that the creditor

only participated in the reorganization proceeding with respect to the property for which it filed a proof of claim. *Id.* at *6. Unlike in *Greater American*, "the City timely filed proofs of claim for all six of the properties subject to the Tax Claim." Bankruptcy Order, 504 B.R. at 378. Extending the reasoning in *Greater American* for a proof of claim on tax bills for one time period and not tax bills on another period for the same property stretches the participation analysis to an impermissible degree. This is even more poignant when considering that the July and October 2009 and January and March 2010 tax bills are for tax liens that arose on the same day and for the same tax year. Consequently, "the City cannot now claim non-participation for the second half of the 2009 tax year when it filed proofs of claim for these same six properties for the first half of the 2009 tax year." *Id.*

Likewise, *Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494 (5th Cir. 2013), is also inapplicable because the secured creditor in that case "never filed a proof-of-claim in the bankruptcy court and otherwise did not involve itself in any way with the ongoing bankruptcy." *Id.* at 495. By contrast, the City filed 21 claims and actively litigated several issues before the Bankruptcy Court.

*In re Barton Industries, Inc.*, 104 F.3d 1241 (10th Cir. 1997), is also distinguishable. The property at issue in that case was a lien on an unearned, return insurance premiums under an insurance premium finance agreement. *Id.* at 1245-46. The case did not involve a property tax. The *Barton* court held that the creditor asserting the lien did not receive sufficient notice because the plan stated that all allowed claims were entitled only to a pro rata share of funds from the creditor trust, but did not specifically refer to the return premiums, the creditor's interest therein, or the plan's effect on such interest. *Id.* at 1246. Here, the City is not challenging the adequacy of notice of the Plan. Moreover, the Plan specifically provides for payment of "Allowed Secured Tax Claims" and the extinguishment of all liens. This would, and did given the City's filing of twenty-one proofs of claims, give the City sufficient notice of the Plan and FairPoint bankruptcy. *See, e.g., Ahern,* 507 F.3d at 823 (finding the plan gave sufficient notice to its treatment of the property to which the creditor's lien attached where the plan "provided for pro-rata payment of all unsecured and undersecured creditors of the debtor, specifically stating that this class of claims including all judgment lien holders").

The City's citation to *Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494 (5th

Cir. 2013), misplaces the case's significance to the instant action. In *Acceptance*, the secured creditor "never filed a proof-of-claim in the bankruptcy court and otherwise did not involve itself in any way with the ongoing bankruptcy." *Id.* at 495. By contrast, the City filed multiple proofs of claims.

The cases cited by the City in which courts did not extend the section 1141(c) exception are not analogous to the instant case. Here, tax liens on the Properties (including tax bills for the 2009 tax lien) were claimed by the City throughout the FairPoint chapter 11 proceedings. The City clearly "participated" in the reorganization. Although it elected not to submit the January and March 2010 tax bills as proofs of claims, this choice does not eviscerate its participation in the FairPoint bankruptcy.

### iii. The Section 1141(c) Exception Applies to the Tax Claim And the City's Tax Lien Does Not Survive In Accordance With 11 U.S.C. § 506

As all four factors outlined in *WorldCom* applies to the Tax Claim, section 1141(c) exception applies here.

The City contends that its lien survives under section 506(d) of the Bankruptcy Code. Appellant Br. at 8-9. Section 506(d)(2) provides, in relevant part:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
> ...
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d)(2). Nonetheless, section 1141(c) provides an exception to section 506(d). The City's tax liens were extinguished by operation of section 1141(c) because the Properties were dealt with pursuant to section 8.9 of the Plan, not because the City failed to file a proof of claim. Consequently, section 506(d) is inapplicable here.

The City suggests that the taxes it failed to include for the last half of 2009 are new claims that can pass through the chapter 11 cases. Under New Hampshire law, "real estate taxes are assessed as of April 1 in each year and the tax year begins on that date. The tax for the whole year is an obligation of the owner as of April 1 and the tax becomes due and payable as of that date." *See Town of Gilford v. State Tax Comm'n*, 229 A.2d 691, 693 (N.H.

21

1967) (emphasis added) (citations omitted); *see also Cote v. Town of Francestown*, No. 17893-98PT, 2000 WL 136841, at *1 (N.H. Bd. Tax. Land. App. Jan. 31, 2000); *Graves v. City of Portsmouth*, No. 16674-96PT, 1998 WL 615432, at *1 (N.H. Bd. Tax. Land. App. July 31, 1998); *Daigle v. Town of Sandown*, No. 2744-84, 1985 WL 19576, at *1 (N.H. Bd. Tax. Land. App. May 16, 1985). As the liens in the Tax Claim arose on April 1, 2009, the taxes billed in January and March 2010 were still covered under the Plan. *See* Plan § 8.9. Moreover, the City filed claims for that tax in the Half-Year Claims. Section 506(d) does not allow a creditor to assert a lien after its claims have been allowed in a fixed amount by court order and then satisfied under a confirmed plan that expressly vests property of the estate in the reorganized debtor free and clear of any liens.

It is not inequitable to affirm the Bankruptcy Court's finding that the City's tax liens were extinguished under the Plan. The Seventh Circuit stated in *In re Penrod*, 50 F.3d 459 (7th Cir. 1995), that the reasons liens can be extinguished if they are dealt with by a plan is that

> [i]t lowers the costs of transacting with the reorganized firm, thus boosting the chances that the reorganization will succeed. By studying the plan of reorganization a prospective creditor of or investor in the reorganized firm can tell whether any liens that

22

> creditors whose interests in the new entity are defined
> in the plan may have had against its bankrupt predecessor
> survive as encumbrances on the assets of the new firm.

*Id.* at 463. *Penrod*'s equitable concerns stem from notice. *See id.* at 464 ("[S]ince the law was not clear with respect to the survival of the lien . . . [the creditor] may not have realized when the plan was adopted that its lien was in jeopardy. Conceivably this might give [the creditor] an equitable defense to the complete extinction of the lien."). Notice concerns do not exist here. The City actively participated in the FairPoint bankruptcy and was provided clear notice that its liens would be extinguished with the terms of the Plan. It also filed proofs of claims for July and October of 2009; the City was clearly aware of the 2009 tax lien on the Properties. Consequently, equitable concerns do not exist.

Accordingly, section 1141(c) applies to the Tax Claim, and the Bankruptcy Court's holdings with respect to this issue is upheld.

> b.   *The City's Tax Claim Is a Prepetition Claims Subject to the Bar Date*

The City contends that the Bankruptcy Court erred in not treating the Tax Claim as an administrative expense claim pursuant

23

to section 503(b)(1)(B) of the Bankruptcy Code. Appellant Br. at 18. The City contends that if the Tax Claim is not a secured prepetition claim, then the taxes that become due post-petition are entitled to administrative expense status. Appellant Br. at 18.

As previously noted, in New Hampshire "[t]he tax for the whole year is an obligation of the owner as of April 1 and the tax becomes due and payable as of that date." *Gilford*, 229 A.2d at 693; *see also* N.H. Rev. Stat. § 76:2 ("The property tax year shall be April 1 to March 31 and all property taxes shall be assessed on the inventory taken in April of that year ...."). Ownership of property on April 1 triggers the obligation of the owner to pay taxes for that year in the state. *Id.* (citing N.H. Rev. Stat. § 76:10; *Town of Gilford*, 229 A.2d at 693).

Section 503 (b)(1)(B) of the Bankruptcy Code provides, in relevant part, that "there shall be allowed, administrative expenses ... including ... (B) any tax – (i) incurred by the estate, whether secured or unsecured, including property taxes for which liability is *in rem*, *in personam*, or both, except a tax of a kind specified in section 507(a)(8) of this title." 11 U.S.C.A. § 503 (b)(1)(B)(i). The phrase "incurred by the estate" establishes that it is the date that property taxes are attached and become an

24

obligation, rather than the date that taxes are due, that
determines whether taxes qualify as administrative expenses. *See,
e.g.*, *Marion County Treasurer v. Blue Lustre Prods. (In re Blue
Lustre Prods.)*, 214 B.R. 188, 190 (S.D. Ind. 1997) ("[I]t is clear
that the property taxes were incurred . . . a full twenty months
prior to the date the bankruptcy petition was filed. Because the
estate does not exist until after the bankruptcy petition is filed
... taxes incurred by the debtor prior to the filing of the
petition are not taxes incurred by the estate."). The Tax Claim
became an obligation of New England Telco on April 1, 2009, the
date taxes incur in New Hampshire. *See, e.g.*, *In re BH S&B
Holdings*, 435 B.R. 153, 165 (Bankr. S.D.N.Y. 2010) (finding that
local Texas tax liens attached and became a personal obligation of
the debtors on January 1 because under state law "a tax lien
attaches to property to secure payment of all taxes ... ultimately
imposed for the year on the property" on January 1 of each year).
Consequently, the Tax Claim is a prepetition claim.

The City contends that since it was a governmental unit,
it was not required to file an administrative expense request by
the Administrative Expense Bar Date by operation of section
503(b)(1)(D) of the Bankruptcy Code. Appellant Br. at 18; *see* 11
U.S.C. § 503(b)(1)(D) ("[N]otwithstanding the requirements of
subsection (a), a governmental unit shall not be required to file

25

a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense."). However, bar date orders "can bind tax claimants to file administrative claims for postpetition personal property and other taxes despite the exception in 503(b)(1)(D) that governmental units are not otherwise required to file requests for payment of administrative expenses .... the 503(b)(1)(D) exception does not apply where the court has entered an administrative bar date order applicable to governmental units." *BH S&B Holdings*, 435 B.R. at 164-65. Thus, if an administrative bar date order "applies generally to 'all parties' ... [t]ax [a]uthorities are required to comply with it regardless of section 503(b)(1)(D) ...." *Id.*

The Plan applied the Administrative Expense Bar Date to all parties, and the City was required to timely file an administrative expense request by March 25, 2011. The City did not timely submit a request for payment of administrative expenses for the Tax Claim prior to the Administrative Expense Bar Date. Consequently, the Tax Claim cannot be treated as an administrative expense claim.

        *c.*    *The Bankruptcy Court Did Not Abuse Its Discretion in Finding That The City Did Not Demonstrate Excusable Neglect*

26

The City contends that the Bankruptcy Court erred when it determined that the City did not demonstrate that its failure to file a proof of claim is the result of excusable neglect. Appellant Br. at 19. Upon review, it is apparent that the Bankruptcy Court adequately considered each factor and did not abuse its discretion in its determination.

Courts must consider four factors when contemplating whether to permit a creditor to file a late claim: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Ass'n. L.P.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993). The ultimate determination will depend on these factors and upon a careful review of "all relevant circumstances." *Id.* No abuse of discretion was made by the Bankruptcy Court in its review of the *Pioneer* factors.

### 1.   Prejudice

Courts consider a variety of factors when determining whether danger of prejudice to the debtor exists, including whether allowing a late claim might precipitate a flood of late-filed

27

claims. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 130 (2d Cir. 2005). The Bankruptcy Order noted that "the Debtors have confirmed a plan under which all timely filed claims against the Debtors have been administered and all distributions have been made" and "[t]he Debtors were prepared to close the case of New England Telco, the Debtors' last remaining open case." Bankruptcy Order, 504 B.R. at 381. Given the status of the Debtor's chapter 11 proceedings, there was a very real possibility that allowing late claims could "inundate[e] the [Bankruptcy] Court with new requests for payment, filing tax liens and asserting foreclosures all over the country." *Id.* (citation and quotation marks omitted).

Concord contends that its claims are relatively negligible in amount. But as the Bankruptcy Court noted "[i]t can be presumed in a case of this size ... that there are other similarly-situated potential claimants to [Concord]." *Id.* The Bankruptcy Court also noted that the Debtors operated in eighteen states. *Id.* Those states' and municipalities' tax laws create the potential of inundating the Bankruptcy Court with new claims if the Tax Claim is approved. Thus, the prejudice recognized by the Bankruptcy Court in allowing the Tax Claim was a real possibility, and it was appropriate to consider "whether allowing a claim would

be likely to precipitate a flood of similar claims." *Enron*, 419 F.3d at 130.

### 2.    Length of Delay

The Bankruptcy Court noted that "[t]his case commenced over four years ago, the Governmental Bar Date passed three and a half years ago, the Plan was confirmed nearly three years ago, and the Administrative Expense Bar Date passed two and a half years ago." Bankruptcy Order, 504 B.R. at 381. The Bankruptcy Court also found that the Debtors were prepared to close New England Telco's chapter 11 case and "all timely filed claims against the Debtors have been fully administered and distributions have been made." *Id.* Allowing the Tax Claim would clearly have risked delaying the proceedings. Accordingly, the Bankruptcy Court did not abuse its discretion on this issue.

### 3.    Reason for the Delay

The Second Circuit emphasizes the third factor, the reason for the delay, as the most important *Pioneer* factor. *See Williams v. KFC Nat. Management Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004). "[E]quities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and ... where the rule

29

is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003) (internal citations omitted).

The City contended before the Bankruptcy Court and in the instant motion that its belief that it was not required to file a proof of claim was mere inadvertence and mistake. *See* Bankruptcy Order, 504 B.R. at 381; Appellant Br. at 22. However, as noted by the Bankruptcy Order, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect ...." *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489; *see* Bankruptcy Order, 504 B.R. at 381. The Bankruptcy Court's finding that the City did not offer any "persuasive justification as to why it failed to file a proof of claim for the Tax Claim" when twenty of the other twenty-one proofs of claims that the City timely filed against the Debtors arose from the Debtors' non-payment of real property taxes and six of these claims relate to the same Properties and the same tax year as the Tax Claim, *see id.* at 382, was not an abuse of discretion. For as the Bankruptcy Court noted, "[e]ven if the City believed that the Tax Claim would be consensually resolved, nothing prevented it from filing a proof of claim for the Tax Claim, just as it did for its other twenty-

one claims." *Id.* Accordingly, this factor weighs against excusable neglect.

### 4.    Good Faith

The last *Pioneer* factor asks whether the movant acted in good faith. The Bankruptcy Court found that this factor "does not favor either party" as the record was insufficient for it to conclude that the City failed to act in good faith. *Id.* The Bankruptcy Court's neutrality as to this factor clearly does not constitute abuse of discretion.

The Bankruptcy Court ultimately reasoned that the since the first three factors favored New England Telco's position, the City did not meet its burden of demonstrating excusable neglect for its failure to file a proof of claim for the Tax Claim. *Id.* Given that the Bankruptcy Court did not abuse its discretion in finding for New England Telco with respect to the *Pioneer* factors, the Bankruptcy Court's ultimate conclusion against excusable neglect and denial of the City's ability to file an untimely proof of claim was not an abuse of its discretion.

**V.   Conclusion**

For the foregoing reasons, the Bankruptcy Order is affirmed. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

It is so ordered.

Dated:   New York, New York
         August 4, 2014

_____
Robert W. Sweet, U.S.D.J.